UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| URFAN MALIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 10924 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MICHAEL C. KIM & ASSOCIATES, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

After Plaintiff Urfan Malik purchased a condominium unit at Oak Brook Towers in a judicial sale, Defendant Michael C. Kim & Associates ("Kim & Associates") sent two letters requesting that Malik pay common expenses to the Oak Brook Towers Condominium Association (the "Association") for six months of assessments that the unit's prior owner failed to pay. Malik alleges these letters violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Kim & Associates moves to dismiss Malik's complaint for failure to state a claim [20]. Because the complaint plausibly alleges that Kim & Associates' letters were sent to collect payment from Malik for a debt he allegedly owed and that these letters violated the FDCPA by being sent directly to Malik, requesting payment for debts not supported by state law, and failing to include disclosures required by the FDCPA, the Court denies Kim & Associates' motion to dismiss.

# BACKGROUND[1]

At a March 10, 2015 judicial sale, Malik purchased a condominium unit at Oak Brook Towers following a judgment of foreclosure and sale entered against the previous owner of the unit, Jeanice Suhajda. The same day, the Association attempted to file a forcible entry and detainer complaint against Suhajda for failing to pay monthly assessments to the Association for common expenses. After the approval of Malik's purchase on March 26, 2015, Malik paid the Association the full amount of one monthly assessment, on April 1, 2015. In May, the Association billed Malik for unpaid assessments and fees for the six months preceding April 2015, including $150 in late fees and $1,085 in legal fees (the "May 2015 Bill"). On May 26, 2015, Malik's attorney, Joanna Hughes, sent a letter to Kim & Associates, the Association's counsel at the time, disputing whether Malik was responsible for the assessments and requesting documentation of the charges.

Kim & Associates responded to Hughes in a letter dated June 5, 2015 ("the June 5, 2015 Letter"), sending it by e-mail and first class mail and then forwarding it to the Association's property manager. The June 5, 2015 Letter informed Hughes that the Association was entitled to collect the six months of unpaid assessments under 765 Ill. Comp. Stat. § 605/9(g)(4), which creates a lien on the condominium unit purchased by a third-party at a foreclosure sale if the previous owner failed to pay assessments and imposes an obligation on the third-party purchaser to pay the delinquent assessments:

---

[1] The facts in the background section are taken from the complaint and exhibits attached thereto and are presumed true for the purpose of resolving the pending motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). This section also includes other facts taken from exhibits attached to Kim & Associates' memorandum in support of its motion to dismiss and Malik's memorandum in opposition to the motion to dismiss. A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to a plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

> The purchaser of a condominium unit at a judicial foreclosure sale
> . . . shall have the duty to pay the proportionate share, if any, of the
> common expenses for the unit which would have become due . . .
> during the 6 months immediately preceding institution of an action
> to enforce the collection of assessments, and which remain unpaid
> by the owner during whose possession the assessments accrued. If
> the outstanding assessments are paid at any time during any action
> to enforce the collection of assessments, the purchaser shall have
> no obligation to pay any assessments which accrued before he or
> she acquired title.

765 Ill. Comp. Stat. § 605/9(g)(4). Thus, Kim & Associates wrote, Malik was liable for Suhajda's six months of unpaid assessments (the "Statutory Six Month Remedy") because the Association had filed a forcible entry and detainer complaint against Suhajda on March 10, 2015. Kim & Associates also provided a breakdown of and documentation supporting the various charges on the May 2015 Bill and documentation supporting the charges, including a unit owner ledger that showed the Association had received payment for the October 2014 assessment from Suhajda on October 22, 2014. The letter further stated that the Association was entitled to collect the attorneys' fees it incurred in connection with enforcing Malik's alleged obligation to pay.

Hughes again disputed the debt in a letter she sent on June 15, 2015. Kim & Associates responded in a letter on September 2, 2015 ("the September 2, 2015 Letter"), which was sent by e-mail and first class mail to Hughes, forwarded to the property manager, and also e-mailed to Malik himself. The September 2, 2015 Letter responded to Hughes' arguments from her second letter and reiterated that the Association was entitled to collect the Statutory Six Month Remedy. Both of Kim & Associates' letters stated that Malik "is liable for all charges to his account" and requested payment. Doc. 1-1 at 3; Doc. 1-2 at 2.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Malik alleges that Kim & Associates violated the FDCPA by (1) failing to send Hughes, Malik's counsel, a written notice in compliance with § 1692g; (2) attempting to collect a debt that the Association could not collect under 765 Ill. Comp. Stat. §§ 605/9(g)(4), 605/9(g)(1), or 605/9.2(b); and (3) sending the September 2, 2015 Letter directly to Malik via e-mail, despite having knowledge that he was represented by Hughes. To state a claim under the FDCPA, Malik must allege that (1) Kim & Associates qualifies as a "debt collector" as defined in § 1692a(6), (2) Kim & Associates acted "in connection with the collection of any debt," and (3) its actions violated one of the FDCPA's substantive provisions. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (citations omitted). There is no dispute that Malik plausibly alleges that Kim & Associates is a debt collector under the definition provided in § 1692a(6), but

Kim & Associates contends that the letters it sent to Malik and his counsel were not connected to the collection of any debt and that its actions did not violate any substantive provision of the FDCPA.

I.      **Collection of Debt**

To determine whether Kim & Associates' communications were made in connection with the collection of a debt, the Seventh Circuit counsels against application of a bright-line rule. *Simpson v. Safeguard Props., LLC*, No. 13 C 2453, 2013 WL 2642143, at *3 (N.D. Ill. June 12, 2013) (citing *Gburek*, 614 F.3d at 384). Rather, the Court analyzes Kim & Associates' actions with a commonsense inquiry that considers several factors, including whether the communications contained a demand for payment, the nature of the parties' relationship, whether payments were past due, the purpose and context of the communication, and whether the debt collector made the communication to induce the debtor to settle the debt. *Gburek*, 614 F.3d at 385.

Kim & Associates argues that Malik's claims fail because Kim & Associates' letters did not threaten to take any legal action against Malik, so they could not be connected to debt collection. However, a communication need not threaten to take action against a debtor to be connected to the collection of a debt; even a communication that does not contain an explicit demand for payment may be classified as such. *Id.* Despite no threat of legal action, both letters stated that "the Association kindly requests your client remit payment for said amount," Doc. 26 at 8, which indicates they were sent to collect a debt. *See Paz v. Portfolio Recovery Assocs., LLC*, No. 14 C 9751, 2016 WL 1463401, at *2 (N.D. Ill. Apr. 14, 2016) (holding that a letter containing a demand for payment was sent in connection with the collection of a debt).

Further, Malik alleges other facts suggesting Kim & Associates' letters were made in connection with the collection of a debt. Kim & Associates' relationship with Malik arose solely out of the debt the Association sought to collect from him. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 799 (7th Cir. 2009) (holding that a written notice was a communication in connection with the collection of a debt where the "only relationship the defendants had with the plaintiffs arose out of . . . ownership of the plaintiffs' defaulted debt"). The payments at issue could also reasonably be inferred to have been past due; the Association sought to charge Malik $150 in late fees. Finally, Malik's allegations suggest that Kim & Associates sent the letters to induce Malik to settle the debt—the 6/5/15 letter contained a list of the charges that made up the debt and both letters responded to Hughes' arguments disputing the debt by countering Hughes' claim with a demand for payment. *See Price v. Seterus, Inc.*, No. 15 C 7541, 2016 WL 1392331, at *4 (N.D. Ill. Apr. 8, 2016) ("[T]he context of the letters, each of which refer to a specific amount due and when such an amount would be due by, support[s] a finding that the communications could plausibly have been meant to collect a debt." (footnote omitted)). In light of the content of the letters and the context in which they were sent, the Court finds that Malik plausibly alleges they were communications made in connection with the collection of a debt.

Kim & Associates implies that because Hughes first sent a letter disputing the Association's request for the Statutory Six Month Remedy, Kim & Associates could not have engaged in any communication prohibited by the FDCPA. When determining whether a communication was made in furtherance of the collection of a debt, "[s]ome courts draw a distinction between a communication initiated by a debt collector, and a communication sent in response to a consumer inquiry." *Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 535–37 (W.D. Pa. 2012) (collecting cases). But the fact that Kim & Associates' letters were sent in response to

Hughes' letter does not automatically immunize Kim & Associates from any having to follow the FDCPA. *See id.* at 536–37 (holding that debt collector's responses to plaintiff's initial requests for debt information could violate FDCPA where plaintiff's initial communication with the debt collector was precipitated by the foreclosure notice that the plaintiff had received); *accord Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1080–81 (N.D. Ill. 2014) (holding that debt collector could orally provide FDCPA notices after debtor initiated communication with a phone call). As the district court in *Trunzo* noted, there is a distinction between (1) a communication from a debt collector who attempts to answer a consumer-initiated question, which is an informational communication that courts have found to not be made in connection with collecting a debt, and (2) a response to a consumer-initiated question that attempts to collect the disputed debt, which is an attempt to collect a debt even though there is an explanatory element in the communication. *See Trunzo*, 876 F. Supp. 2d at 535–36. Here, Hughes did not randomly reach out to Kim & Associates; instead, Malik alleges that the Association demanded payment from him so Hughes asked for information backing the Association's demand for the Statutory Six Month Remedy. Rather than just engage in a "benign exchange of helpful information," Malik sufficiently alleges that Kim & Associates' two letters attempted to collect a debt, making them "far more than informational." *Id.* at 535–37. For the foregoing reasons, the Court finds that Malik can challenge the legality of Kim & Associates' letters under the FDCPA as communications made in connection with the collection of a debt.

## II. Alleged Violations of the Substantive Provisions of the FDCPA

### A. 15 U.S.C. § 1692g(a)

In Count I, Malik alleges that Kim & Associates failed to send Hughes a notice stating that (1) Kim & Associates would assume the debt was valid unless Malik disputed its validity within thirty days after receipt of the notice and (2) Kim & Associates would verify the debt and send Malik a copy of the verification if Malik disputed the debt in writing within the thirty days, as required by 15 U.S.C. § 1962g(a). *See* 15 U.S.C. § 1692g(a)(3)–(4). Kim & Associates argues that it never contacted Malik directly, so it was not obligated to send Malik the thirty-day validation notice required by § 1692g(a) within five days after its initial communication with his counsel on June 5, 2015.[2] Under the FDCPA, a communication with Malik's attorney is an indirect communication that can still trigger the requirements of the § 1962g. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) ("[A]ny written notice sent to [a] lawyer must contain the information that would be required by [§ 1692g] if the notice were sent to the consumer directly."). Therefore, although Kim & Associates sent the June 5, 2015 letter only to Malik's counsel, it still had to comply with § 1962g and send Hughes the notice mandated by § 1692g(a) within five days of sending the letter. *Id.* Malik alleges that he never received a written notice that states or suggests that he may dispute the validity of the debt or request verification of the debt within a thirty-day period, and neither the June 5, 2015 Letter nor the September 2, 2015 Letter contains this type of statement. Therefore, Malik plausibly alleges in Count I that Kim & Associates actions' violated § 1692g(a)(3)–(4).

---

[2] Kim & Associates also argues that it was not attempting to collect a debt from Malik so it did not need to provide any notices under § 1692g, but, as discussed, Malik plausibly alleges that Kim & Associates' letters were sent to collect on debts allegedly owed by Malik.

**B.     15 U.S.C. § 1692f(1)**

In Count II, Malik alleges that Kim & Associates violated 15 U.S.C. § 1692(f) by demanding payment for attorneys' fees and costs not provided for by law or agreement because the Association was not entitled to the Statutory Six Month Remedy under Illinois law and therefore could not collect attorneys' fees and costs arising from the Statutory Six Month Remedy. Section 1692(f) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is . . . expressly authorized by the agreement creating the debt or permitted by law". 15 U.S.C. § 1692f(1). Kim & Associates moves to dismiss, arguing that the Illinois Condominium Property Act (the "Act") and the Association's condominium association agreement ("Condo Association Agreement") both provided for fees and costs, so there was a legal and contractual basis for the attorneys' fees and costs sought in the two letters.

As to a legal right to attorney's fees and costs, if a condominium association is entitled to the Statutory Six Month Remedy, the Act allows for attorneys' fees and costs of collection to be added to the amount owed by the purchaser of the unit on which the past assessments must be paid. 765 Ill. Comp. Stat. § 605/9(g)(1) (describing amount due for failure to pay assessments under § 605/9(g) extends to "interest, late charges, reasonable attorney fees . . . and costs of collections"); *see also* 765 Ill. Comp. Stat. § 605/9.2(b) (allowing for attorneys' fees in the case of "default . . . in the performance of any of the provisions of . . . any applicable statute"). But the Statutory Six Month Remedy is calculated "for the 6 months immediately preceding institution of an action to enforce the collection of assessments." 765 Ill. Comp. Stat. 605/9(g)(4). Malik alleges that the Association failed to properly or timely institute an action to enforce the collection of assessments against Suhajda. Without an action to enforce the

9

collection of assessments, the calculation of the Statutory Six Month Remedy cannot begin under the plain language of the Act. Without entitlement to the Statutory Six Month Remedy, the Association would not be entitled to fees and costs under § 605/9(g)(1), and there would be no failure to follow the statute that would trigger attorneys' fees under § 605/9/2(b) either, which ultimately would leave Kim & Associates with no basis in the law to attempt to collect fees and costs. At the motion to dismiss stage, taking Malik's allegations as true, Malik states a claim that there was no legal basis for Kim & Associates' demand for fees and costs.

Kim & Associates also argues that the Association was entitled to collect attorneys' fees under the Condo Association Agreement, but the agreement is not properly before the Court—Malik did not describe or attach the agreement to the complaint and Kim & Associates failed to attach the agreement to its motion to dismiss filings—so the Court cannot consider whether the agreement saves Kim & Associates at the motion to dismiss stage. *Cf. Hecker*, 556 F.3d at 582–83 (collecting cases, noting that district courts can consider extrinsic evidence referenced in complaint and central to claim when presented to the court by the defendant).

After discovery, the facts may show that Kim & Associates had a legal or contractual basis for the attorneys' fees and costs that it demanded, but Kim & Associates fails to show that Malik's allegations in his complaint indicate that Kim & Associates was entitled to the attorneys' fees and costs it requested. Therefore, the Court rejects Kim & Associates' argument that it did not violate § 1692f because it had a contractual or legal basis for the attorneys' fees and costs it requested.

Kim & Associates further argues that Hughes was a competent lawyer, so the letters sent to her are not actionable, and that the letters did not threaten to take any prohibited action, and argues that it did not violate § 1692f(1) because a competent attorney would not have been

10

deceived or misled by the letters it sent. Kim & Associates cites *Evory*, where the Seventh Circuit noted that "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable" under the FDCPA. 505 F.3d at 775. Although the *Evory* court advised that a communication to a competent lawyer could not be deceptive or misleading so as to violate § 1692(e) of the FDCPA, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692(e), the *Evory* court also clearly noted that debt collectors might still violate the FDCPA by sending patently false communications to attorneys. *Id.* More importantly, "a threat to impose a penalty that the threatener knows is improper because unlawful" could also support a claim for a substantive violation of the FDCPA, even if sent to an attorney. *Id.* at 778 (threatening a plaintiff's lawyer that the defendant would impose a debt penalty would likely violate §§ 1692(d) or 1692(e) of the FDCPA if the penalty was not allowed by state law). The Court does not find that *Evory* forecloses any claim under § 1692(f) simply because Kim & Associates sent the letters to Hughes, Malik's attorney. Thus, the Court rejects Kim & Associates' argument that it did not violate § 1692(f).

Kim & Associates also argues that even if it is not a defense that the letters were sent to Malik's attorney, Malik fails to allege a violation of § 1692(f) because Kim & Associates did not threaten to take any action, like filing suit or reporting Malik to credit agencies, but instead only sent courtesy letters to Hughes. As discussed, the fact that there was no threat of suit does not mean that Kim & Associates was not attempting to collect a debt. Further, § 1692(f)(1) does not prohibit threat of suit, as Kim & Associates suggests. Rather, it establishes that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt"

11

and that a debt collector violates the FDCPA with the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f). An action that "require[s] a presentation of an amount due" or attempts "to receive payment" may fall within the ambit of § 1692(f)(1). *See Acosta v. Credit Bureau of Napa County*, No. 14 C 8198, 2015 WL 1943244, at *3 (N.D. Ill. Apr. 29, 2015) (discussing and applying broad definition of the word "collect" to ensure the legislative intent of § 1692(f)(1) was met at pleading stage).

Finally, Kim & Associates argues that Malik's claim should be brought under § 605/9(g)(4). However, Malik is not alleging a substantive violation of § 605/9(g)(4). Instead he alleges that Kim & Associates improperly invoked § 605/9(g)(4) in an attempt to collect a debt and related fees and costs from him.

Therefore, the Court denies Kim & Associates' motion to dismiss Count II.

### C.   15 U.S.C. § 1692(c)(a)(2)

Finally, in Count III, Malik alleges that Kim & Associates violated § 1692(c)(a)(2) when it contacted him directly by forwarding the September 2, 2015 Letter to him, despite knowing that he was represented by Hughes. According to the plain language of § 1692(c)(a)(2), "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692(c)(a)(2); *see also Evory*, 505 F.3d at 773 ("But if the debt collector knows that the consumer is represented by a lawyer, then . . . he may not communicate with the consumer directly."); *In re Duke*, 79 F.3d 43, 46 (7th Cir. 1996) (noting that debt reaffirmation letter sent to debtor's attorney and copied directly to the debtor himself "raises questions" under § 1692(c)(a)(2)). Kim & Associates argues that it sent the letters only to Hughes, Malik's

12

counsel, and that communications between a debt collector and a debtor's attorney do not fall under the ambit of § 1692(c).  But Malik alleges that Kim & Associates sent the September 2, 2015 Letter directly to him via e-mail, even though the copy of the letter attached to the complaint states only that Kim & Associates sent it to Hughes and forwarded it to the property manager.  At the time Kim & Associates sent the letter to Malik, Hughes had already contacted Kim & Associates on Malik's behalf.  Therefore, the Court can infer that Kim & Associates knew Hughes represented Malik.  Malik alleges that Kim & Associates sent the letter directly to him.  So while the letter indicates that Kim & Associates only sent it to Hughes and the property manager, and even though discovery may prove this to be the case, at the pleading stage, taking the complaint's factual allegations as true, Malik plausibly alleges that Kim & Associates violated § 1692(c)(a)(2).  *See generally In re Duke*, 79 F.3d at 46 (a debt collector's decision to send a "copy of a letter to an attorney directly to a debtor-client . . . raises questions"); *cf. Tinsley v. Integrity Fin. Partners, Inc.*, 634 F.3d 416, 419 (7th Cir. 2011) ("§ 1692(c) as a whole permits debt collectors to communicate freely with consumers' lawyers.  A debtor who does not want to be pestered by demands for payment, settlement proposals, and so on, need only tell his lawyer not to relay them.").  Therefore, the Court denies Kim & Associates' motion to dismiss Count III.

## CONCLUSION

For the foregoing reasons, Kim & Associates' motion to dismiss [20] is denied.  Kim & Associates is ordered to answer the complaint by September 29, 2016.

Dated: September 8, 2016

_____
SARA L. ELLIS
United States District Judge